UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                      Case No. 18-CR-182 (JPS)

NICKIE FOSTER,

        Defendant.

---

## GOVERNMENT'S SENTENCING MEMORANDUM

---

The United States of America, by and through its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Margaret B. Honrath, Assistant United States Attorney, hereby submits the following memorandum in advance of the sentencing hearing set for March 5, 2020.

### I. Procedural Background

On September 18, 2018, a federal grand jury returned a 15-count indictment charging defendant Nickie Foster with five Hobbs Act robberies and five counts of using a firearm during a crime of violence. Under the charges in the indictment, Foster faced a potential mandatory minimum sentence of 41 years in prison. On December 12, 2019, Foster pled guilty to five Hobbs Act robbery counts, two counts of brandishing a firearm during a crime of violence, and one count of discharge of a firearm during a crime of violence. At sentencing, Foster faces a statutory mandatory minimum sentence of 24 years in prison on the firearm counts.

## II. Calculation of the Advisory Guideline Range

The presentence report (PSR) recommends an advisory sentencing range of 70 months to 87 months' imprisonment as to the Hobbs Act robbery counts. Under U.S.S.G. § 2K2.4(b), the advisory sentencing guidelines for the § 924(c) counts is the statutory mandatory minimum, which must run consecutive to any other sentence.

## III. A Sentence Above the Mandatory Minimum But Below the Low-End of the Guidelines is an Appropriate Sentence under 18 U.S.C. § 3553(a)

Overall, the court must impose a sentence that is sufficient but not greater than necessary. To this end, the court must consider the factors set forth in 18 U.S.C. § 3553(a). *United States v. Harris*, 490 F.3d 589, 593 (7th Cir. 2007). The factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, to afford adequate deterrence, and protect the public from further crimes by the defendant; and to provide the defendant with needed training opportunities or medical care. *See* 18 U.S.C. § 3553(a).

### A. *Nature of the Offenses*

On five separate occasions in a span of 14 hours, Nickie Foster pointed a handgun at innocent people. She discharged that gun at least two times: once to frighten a taxi cab driver; and the second time to immobilize a gas station employee. Foster demonstrated an utter disrespect for the law and a disregard for the lives she impacted.

During each of the four taxi cab robberies, Foster pointed a handgun into the faces and heads of taxi cab drivers. Despite their acquiescence to hand over their meager wages, she repeatedly yelled at them and threatened to shoot them. She manhandled them, and she pistol-whipped some of them. She did all of this in the very close confines of their taxi cabs.

2

Below are two still photos from the first taxi cab robbery. During this robbery, Foster pointed the gun at the driver's head and then pulled his turban off, accusing him of hiding money from her.





During the second taxi cab robbery, Foster pointed the gun at the driver and repeatedly told him not to look back or she'd "blow [his] face off." A still shot from the robbery is below:



This taxi cab driver reported that this was the first time he was robbed in the 10 years he's been a taxi cab driver. He continues to work as a taxi cab driver, but every day he thinks about the robbery and is scared that someone is going to point a gun at his head and rob him again. PSR ¶ 68. He has incurred significant losses to his income because he is too frightened to take calls to or from certain areas of the city. *Id.*

During the third taxicab robbery, Foster again pointed the gun at the driver. A still image from the third robbery is below:

4



She yelled at him over and over, "Put your face in the mother fucking steering wheel!" She said she'd "blow this bitch [referring to the gun] off," if he looked back. Soon thereafter, Foster's co-defendant Martell Ford entered the front passenger's seat of the cab and joined Foster. Foster continued to point the gun at the driver. While Ford dug through the driver's pockets, Foster leaned into the driver's area and hit the driver in the head with the gun.

This particular driver had immigrated to America in 1998. He had been a cab driver for 20 years. This was the first time he had ever been robbed. He said, "The day I was robbed was the worst day of my life since I came to America." PSR ¶70.

5

During the fourth taxicab robbery, Foster again pointed the gun at the taxi cab driver, ordered him to put his head on the steering wheel, and said, "I'll kill you on the spot." A still image from the robbery is shown below:



Despite his compliance with her demands, she struck him in the head with the gun. After taking his wallet and cell phone, Foster told him not to turn around for five minutes and she got out of the cab. When the driver looked back at Foster, Foster fired a shot in the air. That was this drivers last night driving a cab – after nine years on the job, he quit because the robbery made him fear that the next time something like this happened, he may not go home. PSR ¶72.

Just an hour later, Foster entered the Petro Mart gas station and caused unthinkable damage and destruction on a human life. The still image below shows Foster and Johnson soon after they entered the Petro Mart and the employee approached them.



Foster submits that the shooting was accidental insofar as while she was running after the employee, the cash room door hit her arm, causing the firearm to discharge. However, Foster's violent conduct in the hours leading up to the Petro Mart robbery and her repeated threats to hurt people demonstrate her desire to cause harm to anyone who did not immediately comply with her demands. Unlike the taxi cab drivers, the Petro Mart employee had space to run away, so he did. Upon doing so, Foster ran after him. It was during her chase of him, while he sought protection in

the cash room, that she shot him in the head. She hit the frontal lobe of his brain and "ruined his life" PSR ¶73.



After the shooting, Johnson encouraged Foster to continue what they set out to do. The employee's last memory was Foster trampling on his stomach to get to the cash register. After obtaining the money, Johnson and Foster fled the store, leaving the employee to die. To Foster's credit, she did not continue on the violent rampage as did Johnson.

Foster's repeated violence toward taxi cab drivers and disregard for human life during the Petro Mart robbery demand a prison term above the mandatory minimum. While Johnson seemed to have played somewhat of an instigator role in the taxi cab robberies, Foster's acts and threats during the taxi cab robberies reflect that she was much more than Johnson's pawn. They were partners in this violent escapade.

8

B. *History and Characteristics of the Defendant*

The PSR and Foster's sentencing memorandum details Foster's significant intellectual, psychological, and mental health issues and her history of trauma. Interestingly, Foster's background presents more similarities with Johnson then differences. Both suffer from low-intellectual functioning, mental instability and childhood trauma. Both are products of a broken system. However, their backgrounds only serve as a possible explanation for their involvement in these crimes, but not an excuse. Foster made intentional decisions to victimize others, strangers who were just trying to make ends meet at low-wage jobs.

IV. **Conclusion**

It is with all of this in mind that the United States believes a total sentence of 27 years in prison is appropriate, comprising of the 24-year mandatory minimum plus the below-guideline sentence of 36 months on the robbery counts. The government anticipates making additional statements at the sentencing hearing.

Dated at Milwaukee, Wisconsin, this 4th day of March, 2020.

                            MATTHEW D. KRUEGER
                            United States Attorney

By:    *s/ Margaret B. Honrath*
        Assistant United States Attorney
        Illinois Bar Number: 6296758
        Attorney for Plaintiff
        Office of the United States Attorney
        Eastern District of Wisconsin
        517 East Wisconsin Avenue, Room 530
        Milwaukee, Wisconsin 53202
        Telephone: (414) 297-1582
        Fax: (414) 297-1738
        E-Mail: Margaret.Honrath@usdoj.gov